IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MARINOR ASSOCIATES, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-08-1868 |
| | § | |
| MN PANAMA EXPRESS, her engines, | § | |
| boilers, etc. *in rem*, PRIMERA | § | |
| MARITIME (HELLAS) LTD., SLADE | § | |
| SHIPPING, INC., FOREIGN TRADE | § | |
| EXPORT PACKING CO. INC., | § | |
| RICKMERS-LINIE GMBH CIE KG, and | § | |
| RICKMERS-LINIE (AMERICA), | § | |
| INC., *in personam*, | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM AND ORDER

Pending is Defendant Primera Maritime (Hellas) Ltd.'s Motion to Dismiss Pursuant to Federal Rule 12(b)(2) (Document No. 31), to which Plaintiff Marinor Associates, Inc. has filed its opposition. After carefully considering all of the parties' submissions, the Court concludes that the motion should be denied.

I. Background

This case arises from the loss at sea during heavy weather of eight riser joints and damages sustained to additional riser joints all being transported aboard the M/V Panama Express (the "Vessel"). Plaintiff manufactured the thirty-three (33) riser joints and contracted to ship them from the Port of Houston to Pusan, South

Korea. Plaintiff named among the other Defendants sued for this loss the Vessel's manager, Primera Maritime (Hellas) Ltd. ("Primera"), which in the present motion contends the Court does not have jurisdiction over Primera.

The riser joints were loaded and secured on the Vessel's deck at the Port of Houston. Primera contends that port captains working on behalf of the timeسub-charterer Rickmers oversaw the loading and securing of the riser joints, and that the lashing and securing was performed by stevedores or other lashing subcontractors employed by Rickmers or Conti Lines, the charterer which had time sub-chartered the Vessel to Rickmers.[1] Plaintiff alleges the following:

> On June 4, 2007, after loading operations were completed but prior to departure, the PANAMA EXPRESS's Chief Officer calculated the vessel's stability situation and noted that it was the highest GM (metacentric height) for any previous cargoes carried aboard that vessel. Additionally, prior to departure, the vessel's Master recognized the poor manner in which the subject riser joints were stowed and the inadequacy of the lashings used to secure the subject riser joints. Despite these egregiously unseaworthy conditions, the Master negligently decided to depart the Port of Houston for the transpacific voyage to Pusan, South Korea.[2]

Fewer than 36 hours after departure from the Port of Houston, the Vessel encountered heavy weather, the risers became loose from

---

[1] Document No. 31 at 3.

[2] Document No. 33 at 3-4.

2

their lashings, eight riser joints were lost overboard, and others were damaged.

## II. Discussion

### A. Personal Jurisdiction Standard

A federal court may exercise personal jurisdiction over a nonresident defendant if: (1) the long-arm statute of the forum state confers personal jurisdiction over that defendant; and (2) the exercise of such jurisdiction comports with due process under the United States Constitution. See Electrosource, Inc. v. Horizon Battery Techs., Ltd., 176 F.3d 867, 871 (5th Cir. 1999). Because the Texas long-arm statute has been interpreted to extend as far as due process permits, the sole inquiry is whether the exercise of personal jurisdiction over a nonresident defendant comports with federal constitutional due process requirements. Id.

This due process inquiry focuses upon whether the nonresident defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 66 S. Ct. 154, 158 (1945). Two types of personal jurisdiction are recognized: (1) specific and (2) general. Specific jurisdiction exists when the cause of action relates to or arises out of the defendant's contacts with the forum. See Helicopteros Nacionales

de Columbia, S.A. v. Hall, 104 S. Ct. 1868, 1872 n.8 (1984). Alternatively, general jurisdiction may be exercised over a defendant who has systematic and continuous contacts with the forum. *See* id. at 1872-73.

When an evidentiary hearing on the question of personal jurisdiction is not conducted, the party seeking to establish jurisdiction bears the burden of presenting a *prima facie* case of personal jurisdiction. *See* Alpine View Co. Ltd. v. Atlas Copco AB, 205 F.3d 208, 215 (5th Cir. 2000); Wien Air Ala., Inc. v. Brandt, 195 F.3d 208, 211 (5th Cir. 1999). Proof by a preponderance of the evidence is not required. Kelly v. Syria Shell Petro. Dev. B.V., 213 F.3d 841, 854 (5th Cir. 2000). A plaintiff may present a *prima facie* case by producing admissible evidence which, if believed, would suffice to establish the existence of personal jurisdiction. *See* WNS, Inc. v. Farrow, 884 F.2d 200, 203-04 (5th Cir. 1989). Uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits and other documentation must be construed in the plaintiff's favor. *See* Alpine View, 205 F.3d at 215.

B. Analysis

Primera denies that it is subject to specific jurisdiction because, as manager of the time-chartered Vessel, it "is not involved in decisions affecting the Vessel's ports of call, and

4

does not direct the Vessel to any port except in the case of emergency."[3] Primera relies on the Fifth Circuit decision in <u>Asarco Inc. v. Glenara Ltd.</u>, 912 F.2d 784 (5th Cir. 1990) for the proposition that a vessel's manager does not purposefully avail itself of the jurisdiction of a port of call that was chosen solely by the vessel's time-charterer.[4] In <u>Asarco</u>, however, the cargo was loaded in Australia and was lost at sea long before the vessel ever reached Louisiana, where the plaintiff sued the owner and manager of the vessel. 912 F.2d at 785. The vessel had been time-chartered to a third party, which directed the vessel to carry the cargo to Louisiana. <u>Id.</u> at 786. The vessel's manager was a Hong Kong corporation named Anglo-Eastern Management Services Limited ("Anglo-Eastern"). <u>Id.</u> at 785. Anglo-Eastern and the vessel's owner successfully asserted in the Louisiana district court that it lacked personal jurisdiction over them. The Fifth Circuit affirmed, observing the general rule that "[e]ven a single, substantial act directed toward the forum can support specific jurisdiction," but finding that the plaintiff had failed to show that either the vessel's owner or Anglo-Eastern had directed an act toward Louisiana.

---

[3] Document No. 34 at 5.

[4] Document No. 34 at 7.

5

> Plaintiffs argue that specific jurisdiction exists because [the vessel's owner] and Anglo-Eastern contracted to deliver cargo in Louisiana and their failure to do so, occasioned by the sinking of the CUMBERLANDE, gave rise to this cause of action. The argument fails in the face of uncontroverted evidence negating the existence of any such contract. At the time of its last voyage the CUMBERLANDE was under the control of its charterers, not [its owner]. Although Anglo-Eastern managed the vessel, the CUMBERLANDE sailed only on orders from its charterers; Anglo-Eastern in its capacity as manager did not control the destination. Because neither [the vessel's owner] nor Anglo-Eastern directed the CUMBERLANDE to Louisiana, the fact that the vessel set sail for a Louisiana port does not imply an agreement by either defendant to deliver cargo there.

Id. at 786.

Here, unlike Asarco, Plaintiff's claims against Primera are not based on acts committed outside the forum. Rather, Plaintiff alleges that the Master and crew negligently performed their duties *while physically present* in the Port of Houston, and that Primera was responsible for the Master and crew. "If the nonresident committed the liability-producing acts while physically present in the forum state, this is almost always held a sufficient 'contact' to support personal jurisdiction in lawsuits arising from those acts. This principle is most frequently encountered in cases involving torts committed by nonresidents while temporarily in the state." HITTNER, SCHWARZER, TASHIMA & WAGSTAFFE, RUTTER GROUP PRAC. GUIDE: FED. CIV. PRO. BEFORE TRIAL--5TH CIR. ED. §§ 3.161-3.163 (The Rutter Group 2009) (citing Hess v. Pawloski, 47 S. Ct. 632 (1927)); see also, e.g., Elkhart Eng'g Corp. v. Dornier Werke, 343 F.2d 861, 868

(5th Cir. 1965) ("We therefor hold that Alabama may, consistent with the due process clause of the Fourteenth Amendment, assert jurisdiction over a non-resident, non-qualifying corporation in suits on a claim of liability for tortious injury arising out of activity of the non-resident within the state, even though only a single transaction is involved, and regardless of whether the activity is considered dangerous."). Thus, if Primera is responsible for the actions of the Vessel's Master and crew, who allegedly committed a tort while in Texas, then Primera is subject to personal jurisdiction in Texas. *See, e.g.*, Ortega v. Seaboard Marine Ltd., 400 F. Supp. 2d 987, 990 (S.D. Tex. 2005) ("[I]f the captain and crew committed a tort, at least part of the tortious activity may have occurred in Texas waters. Because Patt Manfield employed the captain and crew, it cannot escape litigation arising out of the allegedly tortious acts of those employees acting within the scope of their employment."). On the other hand, if the Vessel's Master and crew are independent contractors that Primera does not have the right to control, then Primera is not subject to personal jurisdiction in Texas. *See* O'Quinn v. World Indus. Constructors, Inc., 874 F. Supp. 143, 145-46 (E.D. Tex. 1995) (citing Smith v. Piper Aircraft Corp., 425 F.2d 823, 826 (5th Cir. 1970)). This is true even if Primera's motivation for using an independent contractor is to avoid a particular forum's

7

jurisdiction. See <u>Bearry v. Beech Aircraft Corp.</u>, 818 F.2d 370, 375-76 (5th Cir. 1987).

The essential element of an agency relationship is the right of control. <u>Matter of Carolin Paxson Adver., Inc.</u>, 938 F.2d 595, 598 (5th Cir. 1991) (citing <u>Wynne v. Adcock Pipe & Supply</u>, 761 S.W.2d 67, 69 (Tex. App.--San Antonio 1988, writ denied)). This right includes not only the right to assign tasks, but also the right to dictate the means and details of the process by which an agent will accomplish the task. <u>Olympia Capital Assocs., L.P. v. Jackson</u>, 247 S.W.3d 399, 413 (Tex. App.--Dallas 2008, no pet.). Primera states that although it arranged for the crewing of the Vessel though a crewing agency, it "does not employ any of the members of the Vessel's crew, and did not supervise or control the details of their work as far as loading/lashing/securing of the cargo is concerned since same was done by, and under the responsibility of, and pursuant to the specialized knowledge of charterers' supercargo and shippers."[5] In response, Plaintiff proffers Primera's written policy on "Loading Operations," which provides five pages of detailed instructions addressed to the Master of the Vessel and its officers regarding the loading of cargo. The Loading Operations chapter warns that during the loading period,

---

[5] Document No. 34 at 5.

8

>     events happen quickly and unexpected problems can arise
>     which will require prompt attention to ensure that the
>     cargo is loaded in a safe and satisfactory manner and
>     that the ship and cargo are protected from damage
>     throughout. A high level of alertness will be required
>     from the start to the end of the loading period.[6]

The chapter then details numerous responsibilities and tasks of the Master, Chief Officer, Second Officer, and others, including that the Chief Officer preferably shall accompany the surveyor for a preloading survey of the holds, making sure that the Officer has a clear understanding of what the surveyor requires, and give top priority to any work required by the surveyor; accompany the draft surveyor when he takes his readings, designating the Chief Officer or second officer as usually the appropriate person to accompany the surveyor to read the drafts and to check the bilge, ballast, and fresh water soundings, to check for agreement on the readings obtained, and independently to complete a separate set of calculations to obtain figures for bunkers, ballasts, and constant. The Master and his Officers must satisfy themselves that the cargo is acceptable and, when Officers are in doubt, the "Office shall be contacted." The work of crew members is required to be supervised, with the Officer of the watch coordinating the work of the crew with the deballasting and the loading, and supervising the work "as necessary to insure that it is done correctly and with the required degree of thoroughness." Liaison is required to be maintained with

---

[6] Document No. 33, ex. C at 88.

the loading foreman; when cargo is loaded with the ship's cargo handling gear, "a high level of alertness is required by the Officers." Care to avoid pollution, and attention to the weather during loading are requirements imposed upon the Officer of the watch. "During the loading period the Chief Officer must be concerned with a number of matters" and the same is said of the Officer of the watch. Among other things included are monitoring of the entire cargo loading process, regularly checking "that the loading is continuing in accordance with the loading programme," and that the correct cargo is being loaded. Additional requirements relate to the commencement of loading with the Chief Officer normally in attendance "to insure that a swift response can be made to any unexpected problems which occur." The Master's role in loading is elevated when "the cargo is more unusual or when the Officers are inexperienced or unreliable, [in which event] the Master will find it necessary to monitor their work more closely and to undertake or recheck some of the more critical duties normally undertaken by the Chief Officer." "On occasions it may happen that a problem arises with the loading which is outside the Master's experience. In such circumstances, the Master shall not hesitate to stop the loading and consult the Office."

These detailed directives that Primera gave to the Master and other Officers of the Vessel as to their responsibilities and tasks during the loading of the Vessel bear directly on Plaintiff's

allegation that the Chief Officer calculated that the metacentric height on the loaded Vessel was at an unprecedented high, and that the Master himself "recognized the poor manner in which the subject riser joints were stowed and the inadequacy of the lashings," but nonetheless negligently departed the Port of Houston. Additionally, Plaintiff has proffered evidence that, while the Vessel is in port, Primera arranges for crew changes and return travel for crew members, and provides cash to the ship's agent to transfer to the Master for crew wages.[7] This and the other proof presented establishes at least a *prima facie* case that the Master and Officers when the Vessel was in the Port of Houston were agents of Primera, and, hence, Plaintiff has established a *prima facie* case that Primera has sufficient minimum contacts with this forum.[8]

The final step in the analysis asks whether exercising jurisdiction over Primera would offend traditional notions of fair play and substantial justice. Primera bears the burden of presenting a "compelling case" that the presence of other

---

[7] Document No. 35, ex. A at 5; Document No. 38 at 4. n. 11 and exs. B-C.

[8] "[F]or a plaintiff to defeat a motion to dismiss for lack of personal jurisdiction when the plaintiff relies on agency theory, it need only make a *prima facie* showing of the connection between the actions of the agent and the principal." D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd., 566 F.3d 94, 108 (3d Cir. 2009) (internal quotation omitted). Eventually, Plaintiff will have to establish jurisdiction by a preponderance of the evidence, either at a pretrial hearing or at trial. At this stage, however, a *prima facie* case suffices. See Thompson v. Chrysler Motors Corp., 755 F.2d 1162, 1172 n.11 (5th Cir. 1985).

considerations would render jurisdiction unreasonable. <u>Wien Air Alaska</u>, 195 F.3d at 215. Texas has a significant interest in protecting the rights of its corporate citizens and discouraging injuries that occur within the state. See <u>Elkhart</u>, 343 F.2d at 868 ("When a non-resident has voluntarily entered a state and invoked the protections of is laws, it does not in our view offend 'traditional notions of fair play and substantial justice' to require the non-resident to answer in the courts of that state for any tortious acts committed while there."). Primera has failed to argue or present evidence that other considerations make the burden to litigate in Texas sufficiently compelling to outweigh Plaintiff's and Texas's interest. In sum, Plaintiff has presented a *prima facie* case that the exercise of specific personal jurisdiction over Primera is proper.

Plaintiff also contends that the Court has general jurisdiction over Primera. This appears unlikely, see <u>DeLeon v. Shik Wei Nav. Co., Ltd.</u>, 269 F. App'x. 487, 490 (5th Cir. 2008) (per curiam), but does not require discussion in view of the finding that Plaintiff has made a *prima facie* case for specific personal jurisdiction.

III. Order

For the foregoing reasons, it is

ORDERED that Defendant Primera Maritime (Hellas) Ltd.'s Motion to Dismiss Pursuant to Federal Rule 12(b)(2) (Document No. 31) is DENIED.

The Clerk will enter this Order, providing a correct copy to all counsel of record.

SIGNED in Houston, Texas, on this 9TH day of December, 2009.

EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE